USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/30/21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

International Labels LLC,

                    Plaintiff,

        —v—

Sportlife Brands LLC, *et al.*,

                    Defendants.

---

19-cv-11370 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

Plaintiff brings claims against Defendants under federal and state law for inappropriate use of its trademarks.  Defendants move to dismiss for failure to state a claim.  For the reasons that follow, Plaintiff has failed to state a claim for relief but the Court will grant Plaintiff leave to amend.

## I.      BACKGROUND

### A.  Factual Background

The following facts are drawn from Plaintiff's Second Amended Complaint.  Dkt. No. 117.  The trademarks "DONNA L'OREN" and "PRETTY BABY BY DONNA LOREN" (hereinafter "the Marks") were originally developed and owned by a company called Jump Shot Sportswear, Inc. ("Jump Shot").  *Id.* at ¶ 22.  Jump Shot obtained U.S. Trademark registration for the Marks.  *Id.*  For the "PRETTY ANGEL BY DONNA LOREN" mark, Jump Shot obtained registration with the effective date of January 23, 2001, for "ladies' sportswear, namely dresses, outer coats, shoes, sleepwear, and lingerie."  *Id.* ¶ 23 Dkt. No. 117-2.  For the "DONNA L'OREN" Mark, Jump Shot obtained registration with the effective dates of January 30, 2001

"for clothing for men, women, and children, namely sleepwear, lingerie, underwear, t-shirts, stockings, and various other garments and undergarments." *Id.* ¶ 24; Dkt. No. 117-3.

Jump Shot assigned the Marks to Plaintiff International Labels LLC on February 15, 2005 in exchange for $25,000.  *Id.* ¶ 22; Dkt. No 117-1.  The signed writing executing the assignment, which Plaintiff attached to the complaint, states that Plaintiff was assigned "the entire worldwide right, title and interest in and to the Marks (including, without limitation, the [U.S. Trademark] registrations . . . ), together with the goodwill of the business connected with and symbolized by the Marks . . ." Dkt. No. 117-1.

On August 26, 2011 and September 2, 2011, the federal registrations for the Marks were cancelled by the U.S. Patent and Trademark Office for failure to comply with certain statutory requirements.  Dkt. No. 117 ¶ 25.  Specifically, Plaintiff failed to timely file a "maintenance affidavit of use in commerce or nonuse due to special circumstances which excuse such nonuse and is not due to any intention to abandon the mark, which is generally due during the fifth year of a normal ten-year life for a registration."  *Id.*

Since the assignment of the Marks, Plaintiff has licensed the Marks to several licensees, each through a "written Trademark License Agreement" with an automatically renewable fifteen-year term. *Id.* ¶ 27.  The first licensing agreement was with Jump Shot, which was executed on February 15, 2005, the same day that Jump Shot assigned the Marks to Plaintiff.  *Id.* Then on June 1, 2005, Plaintiff licensed the Marks to Donna Loren LLC, and in February 2009, Plaintiff licensed the Marks to Sweet Doll Inc., as well.  *Id.*   Lastly, on April 10, 2013, Plaintiff licensed the Marks to "Envison Accessories LLC."  *Id.*

In its complaint, Plaintiff says that it has "used the Mark continuously to the present and continues to use it in commerce (except for any periods of nonuse due to special circumstances

which excuse such nonuse and is not due to any intention to abandon the Mark.)." *Id.* ¶ 26. Plaintiff alleges that on July 21 and 27, 2016, one of Plaintiff's licensees, Sweet Doll Inc., sold products under the Marks to two separate customers in New York state, as evidenced by copies of the invoices attached to its complaint. *Id.* ¶ 36. It also says that Sweet Doll Inc. advertised the product and attached copies of the advertisements to the complaint. *Id.* Plaintiff alleges that these advertisements were made "prior to the three-year period" before Sportfile Defendants filed their patent application on December 11, 2017.

On December 11, 2017, unbeknownst to Plaintiff, Defendants SportLife Brands, LLC, Starwood Brands LLC, Forever Beauty NY LLC, Elie Levy, Eddie Dayan and Michael Kassin (hereinafter "SportLife Defendants"), who operate a business advertising and selling clothes in New York City, made an application to the U.S. Patent and Trademark Office to register the mark "Donna L'Oren" in connection with the sale of men's and women's sports clothing, sleepwear, undergarments, and other clothing. *Id.* ¶ 30-32. The USPTO suspended the application while waiting for an amendment showing proof of actual use in commerce. *Id.* ¶ 32. After the application was amended, the USPTO granted registration, with an effective date of February 4, 2020, based on a first-use-in-commerce date of May 1, 2019. *Id.* Sportlife Defendants currently have another application pending with the USPTO to use the "Donna L'Oren" mark in connection with other categories, including cosmetics, sport bags, pillows, bedding, and towels, which was filed on February 1, 2018. *Id.* ¶ 33.

Plaintiff maintains that Sportlife Defendants have continued to sell and advertise products using the "Donna L'Oren" mark, which Plaintiff says infringes its Marks. *Id.* ¶ 37. Plaintiff attached purported copies of advertisements from Sportlife Defendants with the allegedly infringing mark. *Id.* ¶ 38.

The remaining Defendants, Amazon.com Inc., Beall's Outlet Stores, Inc., Boscov's Inc., Burlington Stores, Inc., Groupon, Inc., The TJX Companies, Inc., Nordstrom, Inc., Ross Stores, Inc., and unknown "XYX Company" Nos. 1-10, are retailers that have allegedly been advertising, promoting, marketing, and/or selling Sportlife Defendants' infringing goods through their websites (hereinafter "Retailer Defendants"). *Id.* ¶ 41-43.

## B.  Procedural Background

On December 12, 2019, Plaintiff filed a complaint in this Court against Defendants that asserted a number of claims under both federal and state law for inappropriate use of its Marks. Dkt. No. 1.  Plaintiff filed its first amended complaint on March 27, 2020.  Dkt. No. 68. Defendants filed a motion to dismiss on May 8, 2020, in which they pointed out that Plaintiff had omitted in its amended complaint that the registration of its Marks had been cancelled.  Dkt. No. 81.  Pursuant to Rule 3F of the Undersigned's Individual Rules of Practice in Civil Cases, in response to Defendants' motion, Plaintiff informed the Court of its intent to amend its complaint. Dkt. No 110.  Plaintiff filed a Second Amended Complaint, the operative complaint in this action, on August 12, 2020, which includes mention that the registrations were cancelled.  Dkt. No. 117.

Plaintiff asserts claims against all Defendants for Trademark Infringement, False Designation of Origin, Unfair Competition, and Dilution under the Lanham Act and New York law, as well as for Unjust Enrichment, Deceptive Business Practices and False Advertisement under New York law.  Dkt. No. 117.  Additionally, against Sportlife Defendants only, Plaintiff brings claims for Trademark Cancellation and False and Fraudulent Trademark Application under the Lanham Act, and for Declaratory Judgment.  *Id.*  Sportlife Defendants filed a motion to

dismiss, which the remaining Defendants have joined.  Dkt. No. 122, 124, 129.   The motion is fully briefed.  Dkt. Nos. 130-132.

## II.    DISCUSSION

Defendants move to dismiss all of Plaintiff's claims for failure to state a claim under Federal Rules of Civil Procedure 12(b)(6).[1]  On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "dismissal is proper unless the complaint 'contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Schik v. Miramed Revenue Grp., LLC*, No. 18-CV-7897 (NSR), 2020 WL 5659553, at *2 (S.D.N.Y. Sept. 23, 2020) (cleaned up) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The complaint must allege "more than labels and conclusions" to survive the motion.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

As explained below, Plaintiff has failed to plausibly allege that it owned the Marks in question, and for that reason alone Plaintiff has failed to state a claim for most of its federal and state law claims.  And because Plaintiff has also otherwise failed to state a claim for its remaining claims under federal law, the Court will decline to consider its state law claims.   The Court dismisses with prejudice Plaintiff's claim for False and Fraudulent Application, but will grant Plaintiff leave to amend as to its remaining claims.

### A.  Lanham Act Trademark Infringement, False Designation of Origin, Unfair Competition, and Dilution Claims

---

[1] Plaintiff argues that Defendants' motion should be "denied peremptorily" because one Defendant failed to timely file a "notice of motion" and none of the Defendants physically attached a copy of the Second Amended Compliant to their motions, which Plaintiff argues constitute violations of Local Civil Rule 7.1(a).  The Court has "broad discretion to determine whether to overlook a party's failure to comply with local court rules," *Genesi v. Int'l Portfolio, Inc.,* No. 12 CIV. 5462 RA, 2012 WL 5964391, at *2 (S.D.N.Y. Nov. 29, 2012) and will do so here because Plaintiff has not demonstrated that it was prejudiced in any manner from Defendants' purported non-compliance.  *Accord Charles v. Young Life Lake Champion*, No. 11 CV 401 VB, 2013 WL 2362242, at *1 (S.D.N.Y. May 29, 2013).

Plaintiff's claims for Trademark Infringement, False Designation of Origin, Unfair Competition, and Dilution under the Lanham Act all require that Plaintiff first demonstrate that it owns a valid trademark. *See AM Gen. LLC v. Activision Blizzard, Inc.*, 450 F. Supp. 3d 467, 485-86 (S.D.N.Y. 2020) (both trademark infringement and unfair competition claims require showing "that the plaintiff has a valid mark that is entitled to protection under the Lanham Act.") (cleaned up); *Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.,* 220 F. Supp. 2d 289, 297 (S.D.N.Y. 2002) ("[T]he standards for false designation of origin claims under Section 43(a) of the Lanham Act . . . are the same as for trademark infringement claims*."); Dual Groupe, LLC v. Gans-Mex LLC*, 932 F. Supp. 2d 569, 573 (S.D.N.Y. 2013) (to demonstrate "a cause of action for trademark dilution . . . the plaintiff must plead that it owns the mark. . . ") (citing *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.,* 588 F.3d 97, 105 (2d Cir.2009)). However, Plaintiff has not plausibly alleged in its complaint that it acquired ownership of the Marks by way or assignment or through other means.

## 1. Ownership through Assignment

Plaintiff argues that it owns the Marks because it was assigned them by Jump Shot in 2005, an assignment which expressly included both the federal registrations from 2001 and the "entire worldwide right, title and interest in and to the Marks" in 2005. Dkt. No. 126 at 7.

Generally, a valid "assignment is an outright sale of *all rights* in that mark," and thus constitutes a "transfer of an ownership interest." *Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd*., 726 F.3d 62, 75-76 (2d Cir. 2013) (cleaned up). The Lanham Act allows that "[a] registered mark . . . shall be assignable with the good will of the business in which the mark is used, or with that part of the good will of the business connected with the use of and symbolized by the mark." 15 U.S.C. § 1060. "Accordingly, where a trademark is assigned 'in gross,'

without its accompanying goodwill, the assignment is invalid." *Fitzpatrick v. Sony-BMG Music Ent., Inc.,* No. 07 CIV. 2933 SAS, 2010 WL 3377500, at *2 (S.D.N.Y. Aug. 24, 2010).

The goodwill requirement is grounded in the principle that "[t]here are no rights in a trademark apart from the business with which the mark has been associated." *Marshak v. Green*, 746 F.2d 927, 929 (2d Cir. 1984). And because "there can be no trademark absent goods sold and no service mark without services rendered," *Am. Express Co. v. Goetz*, 515 F.3d 156, 161 (2d Cir. 2008), "[t]rademark rights do not exist in the abstract, to be bought and sold as a distinct asset." *Berni v. Int'l Gourmet Restaurants of Am., Inc*., 838 F.2d 642, 646 (2d Cir. 1988). In other words, in order for the assignment of a trademark to be valid, the assignee must actually continue to *use* the trademark, because "if there is no business there is no goodwill and therefore nothing to protect." *Defiance Button Mach. Co. v. C & C Metal Prod. Corp.,* 759 F.2d 1053, 1060 (2d Cir. 1985). The purpose of the assignment in gross rule is precisely to prevent this sort of "trafficking of trademarks" untethered to an actual business. *Fitzpatrick.*, 2010 WL 3377500, at *2.

Though a trademark cannot be severed from the goodwill of a business, it is not necessary, when transferring trademark ownership, that the assignor transfer their actual business to the assignee. "[A] trademark may be validly transferred without the simultaneous transfer of any tangible assets, as long as the recipient continues to produce goods of the same quality and nature previously associated with the mark." *Defiance Button Mach. Co.*, 759 F.2d at 1059 (emphasis added). "[R]ather than looking for some formalistic passage of assets, the test is simply whether the transaction is such that the assignee can 'go on in real continuity with the past.'" *Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc*., 841 F. Supp. 1339, 1350 (E.D.N.Y. 1994). A valid transfer therefore occurs where "(a) the goodwill of the concern has

not wholly dissipated, (b) the . . . assignee retains the intent to produce or market within a reasonable time a product or service substantially the same in nature and quality as that with which the trademark has been associated, and (c) such resumption of operations occurs within a reasonable time under the circumstances." *Defiance Button Mach. Co*, 759 F.2d at 1060.

Therefore, as Plaintiff claims it came to own the trademark via assignment, and ownership of a valid trademark is an element of Plaintiff's claims, Plaintiff must plausibly allege that the assignment was a valid transfer. The Second Circuit has upheld dismissal of a complaint where an alleged successor in interest of a trademark had not "alleged anything that would support the inference that [successor] intended to continue the business of" the predecessor. *Berni*, 838 F.2d at 647. *Cf. J. Atkins Holdings Ltd. v. Eng. Discounts, Inc*., 729 F. Supp. 945, 951 (S.D.N.Y. 1990) (because the plaintiff "continue[d] the association of the trademark with the very goods which created its reputation" after transfer, the "assignment to [plaintiff] did not sever the relationship between the mark and the good-will which it had developed.").

Plaintiff has not plausibly alleged that assignment of the Marks from Jump Shot was valid. To plead a valid assignment, Plaintiff must provide facts in its complaint demonstrating that it actually had "the intent to produce or market within a reasonable time a product or service substantially the same in nature and quality" and must have "resum[ed] . . . operations . . . within a reasonable time under the circumstances." *Defiance Button Mach. Co.*, 759 F.2d at 1060. Plaintiff only alleges it used the trademark when a licensee made two sales of products with the Marks in 2016 and published an advertisement at some point prior to 2014. These discrete instances alone, which appear to have occurred roughly eight and ten years after Plaintiff was purportedly assigned ownership of the Marks, do not plausibly allow for "the inference that [Plaintiff] intended to continue the business of" Jump Shot when the assignment was made.

*Berni*, 838 F.2d at 647.   And while Plaintiff claims that, ever since it was assigned the Marks, it has "used the Mark continuously to the present and continues to use it in commerce (except for any periods of nonuse due to special circumstances which excuse such nonuse and is not due to any intention to abandon the Mark)," *Id.* ¶ 26, that wholly conclusory statement is insufficient to plausibly state this element of its claim.  *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Plaintiff's arguments to the contrary lack merit.  Plaintiff argues that the assignment was valid because the assignment document explicitly stated that Jump Shot was transferring the "goodwill" of the business to Plaintiff.  Dkt. No. 117-1.  But merely stating that goodwill is transferred is not sufficient to create a valid assignment of a trademark.  Under *Defiance Button Mach. Co.*, Plaintiff must allege specific facts demonstrating that it continued to use the Marks after transfer to produce or market the same or substantially similar products or that it had the intent to do so within a reasonable amount of time, 759 F.2d at 1060, and as discussed above, Plaintiff's complaint fails in this regard.

Additionally, Plaintiff argues that it can show continued to use of the trademark through various licensing agreements alone, citing *George Nelson Found. v. Modernica, Inc*., 12 F. Supp. 3d 635, 646 (S.D.N.Y. 2014).  Dkt. No. 126 at 7.  Plaintiff is correct that generally "a plaintiff can demonstrate prior use through licensing the trademark to a licensee." *Dual Groupe, LLC v. Gans-Mex LLC*, 932 F. Supp. 2d 569, 574 (S.D.N.Y. 2013).  However, while the "[u]se of the mark by a licensee to identify or distinguish goods is sufficient to create enforceable rights in favor of the licensor," Plaintiff must allege that its licensees actually *used* the mark.  *Hawaii–Pacific Apparel Group, Inc. v. Cleveland Browns Football Co. LLC*, 418 F.Supp.2d 501, 506

(S.D.N.Y. 2006).  Therefore, while in theory Plaintiff could plausibly plead that after it was assigned the Marks it "continue[d] to produce goods of the same quality and nature previously associated with the mark" through its licensees, *Defiance Button Mach. Co.*, 759 F.2d at 1059, Plaintiff's has not done so.   Again, the two invoices and advertisement by licensee Sweetdoll, Inc. alone do not demonstrate that Plaintiff's licensees "continue[d] to produce goods of the same quality and nature previously associated with the mark."  *Id.*

Moreover, even if the invoices and advertisement by Sweetdoll, Inc. were sufficient in that regard, in order "for the licensor to acquire and maintain ownership based on the licensee's use of the mark, the licensor must exercise some control over the licensee's use of the mark." *Dual Groupe, LLC*, 932 F. Supp. 2d at 574.   Indeed, "it [is] unlawful for . . . a trademark owner to grant . . . a license to a licensee for the use of a mark without the retention of supervisory control," commonly referred to as a "naked license."  *Can't Stop Prods., Inc. v. Sixuvus, Ltd.*, 295 F. Supp. 3d 381, 392 (S.D.N.Y. 2018).  Plaintiff has not provided any factual allegations demonstrating that it retained supervisory control over Sweetdoll, Inc. or any of its other licensees' use of the Marks.

For these reasons, Plaintiff has not pled claim ownership of the Marks based on the 2005 assignment alone.

### 2.  Ownership through prior and continuous use

Even though Plaintiff has not alleged that the assignment of the Marks in 2005 was a valid, Plaintiff could still have acquired the Marks afterwards through other means even if there had been no transfer of ownership in 2005.  Plaintiff, however, has not plausibly alleged that it acquired ownership over the Marks in any manner.

"It is well established that the standard test of ownership is priority of use." *Tactica Int'l,*

*Inc. v. Atl. Horizon Int'l, Inc.,* 154 F. Supp. 2d 586, 599 (S.D.N.Y. 2001).  At the core of this test

is the longstanding principle that the purpose of trademark protection is "to designate the goods

as the product of a particular trader and to protect his good will against the sale of another's

product as his," and thus a trademark "is not the subject of property except in connection with an

existing business."" *George Nelson Found.*, 12 F. Supp. 3d at 645 (citing *United Drug Co. v.*

*Theodore Rectanus Co.*, 248 U.S. 90, 97 (1918)).   Additionally, the Lanham Act provides that, if

a purported owner of a trademark can provide valid registration, it will be considered "prima

facie evidence of . . . the owner's ownership of the mark."  15 U.S.C. § 1057(b).  But while

registration of a trademark provides "valuable benefits" such as the presumptions of ownership,

"[r]egistration of a mark is not mandatory" for ownership of a trademark.  *Iancu v. Brunetti*, 139

S. Ct. 2294, 2297, 204 L. Ed. 2d 714 (2019).  Again, the touchstone of trademark ownership is

use.  *Id.* ("The owner of an unregistered mark may still use it in commerce and enforce it against

infringers.").

A plaintiff can demonstrate ownership of an unregistered trademark by showing that it

was "the first to use a particular mark to identify his goods or services in a given market" and

that it "continues to make use of the mark."  *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 147 (2d

Cir. 2007).  *See also La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.*, 495 F.2d

1265, 1271 (2d Cir. 1974) (ownership goes to "[t]he user who first appropriates the mark obtains

on enforceable right to exclude others from using it, as long as the initial appropriation and use

are accompanied by an intention to continue exploiting the mark commercially.").  In order to

establish ownership through prior and continuous use, "the proponent of the trademark must

demonstrate that his use of the mark has been deliberate and continuous, not sporadic, casual or transitory." *Id.* at 1271-72.

In determining whether the putative owner has sufficiently used a trademark, "the talismanic test is whether or not the mark was used in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark." *Windows User, Inc. v. Reed Bus. Pub. Ltd*., 795 F. Supp. 103, 108 (S.D.N.Y. 1992) (quotations omitted). Absent other evidence of intent or use, if a purported owner of a trademark had only "minimal sales" connected to its use of the mark, that is generally "insufficient to establish trademark rights." *La Societe Anonyme des Parfums le Galion,* 495 F.2d at 1272 (holding that "such a meager trickle of business" as "89 sales in 20 years" did not constitute "the kind of bona fide use intended to afford a basis for trademark protection."). *See also Sadhu Singh Hamdard Tr. v. Ajit Newspaper Advert., Mktg. & Commc'ns, Inc*., 394 F. App'x 735, 736 (2d Cir. 2010) ("sporadic" and "casual" use was "insufficient to defeat the grant of summary judgment in favor of defendants as a matter of law").

Plaintiff has not plausibly alleged ownership of the Marks. First, while Plaintiff argues that the former registration of the Donna L'Oren Mark by Jump Shot was prima facie evidence of Plaintiff's ownership of the Mark, Dkt. No. 117 ¶ 29, Plaintiff is not entitled to a presumption of ownership. As discussed in the previous section, Plaintiff has not alleged that it acquired ownership of the Mark through assignment, therefore Plaintiff is not entitled to the statutory benefits that were previously conferred on Jump Shot. And in any event, those registrations were cancelled in 2011. When a registration is cancelled, the former registrant is no longer entitled to the statutory benefits that go along with it. *See Patsy's Italian Rest., Inc. v. Banas*,

658 F.3d 254, 273 (2d Cir. 2011); *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 887 F.

Supp. 2d 519, 529 n.6 (S.D.N.Y. 2012).

 Even without registration, Plaintiff could still theoretically establish ownership of the

Marks through prior and continuous use.  However, Plaintiff has not done so in its complaint.  As

discussed in the previous sections, the only specifically alleged instances of use in Plaintiff's

complaint are the two invoices in 2016, as well as the advertisement made sometime before

2014, from Plaintiff's licensee SweetDoll, Inc.  As to the invoices, Plaintiff does not allege in its

complaint how much the sales were for, and the price and amount of each product sold in the

invoice is redacted without explanation.  Dkt. Nos. 117-6, 117-7.[2]  Two sales of an uncertain

quantity for an uncertain amount, six days apart, does not constitute "deliberate and continuous"

use of a trademark.  *La Societe Anonyme*, 495 F.2d at 1271-72.

Moreover, the alleged advertisement that was made at some point prior to 2014 does not

change the calculus.  The complaint does not state where Plaintiff's licensee's advertisement was

published and if any meaningful number of people saw it.  The Court therefore cannot conclude

based on the alleged invoices and advertisement that Plaintiff used the Marks "in a way

sufficiently public to identify or distinguish the marked goods in an appropriate segment of the

public mind as those of the adopter of the mark." *Windows User, Inc.,* 795 F. Supp. at 108.

Plaintiff has thus failed to plausibly allege that it obtained ownership over the Marks through

prior and continuous use.  *See Momentum Luggage & Leisure Bags v. Jansport, Inc*., No. 00

CIV. 7909 (DLC), 2001 WL 830667, at *6 (S.D.N.Y. July 23, 2001), *aff'd*, 45 F. App'x 42 (2d

Cir. 2002) (plaintiff's "advertising and promotion," which consisted of "one luggage tradeshow,"

one paid advertisement, several mentions in two trade journals, as well as its "sales," which

---

[2] The attached invoices have the amount "$1,380" written on them, but Plaintiff does not state in the complaint that
this was the amount that was sold.  *Id.*

consisted of "one invoiced sale" for a different product,"  were not "sufficient to create

ownership rights in the" trademark for luggage product.).

* * *

Accepting the facts in Plaintiff's complaint as true, Plaintiff has failed to plausibly allege

that it acquired ownership of the Marks either through a valid assignment or through prior and

continuous use.  Therefore, as Plaintiff has failed to allege the most basic element of its

trademark related claims, Plaintiff has not stated a claim for trademark infringement, false

designation of origin, unfair competition, or dilution.

### B.  Trademark Cancellation, False and Fraudulent Application, and Declaratory Judgment

Plaintiff has also failed to state a claim for the remaining federal claims in its complaint.

In order to make a claim for trademark cancellation under the Lanham Act, "a plaintiff must

show that (1) it has standing to bring a cancellation claim, and (2) there are valid grounds for

why the registration should not continue to be registered."  *Citigroup Inc. v. City Holding Co.*,

No. 99–CV–10115, 2003 WL 282202, at *14 (S.D.N.Y. Feb. 10, 2003). "A registered mark may

be canceled based upon misstatements in a trademark application if the plaintiff demonstrates

that the statements '(1) were made with knowledge of their falsity, and (2) were material to the

determination to grant the application.'" *New World Sols., Inc. v. NameMedia Inc*., 150 F. Supp.

3d 287, 333 (S.D.N.Y. 2015).  "Fraud" on the USPTO "must be proven by clear and convincing

evidence." *Gear, Inc. v. L.A. Gear California, Inc*., 670 F. Supp. 508, 513 (S.D.N.Y. 1987).

Plaintiff has not made this showing.  To the extent Plaintiff's claim for trademark

cancellation is based on the fact that the USPTO should not have granted Sportlife Defendants

registration of the Marks because Plaintiff lawfully owns those Marks, as discussed above,

Plaintiff has failed to plausibly allege ownership of the Marks in its complaint.  Further, to the

14

extent the claim for cancellation is based on Plaintiff's claim for False and Fraudulent

Application, Plaintiff has failed to state a claim for that cause of action as well.   "Fraud in

procuring a trademark registration . . .  occurs when an applicant knowingly makes false,

material representations of fact in connection with his application."  *MPC Franchise, LLC v.*

*Tarntino*, 826 F.3d 653, 658 (2d Cir. 2016).  The only fact alleged in Plaintiff's complaint to

support that Sportlife Defendants were aware of Plaintiff's alleged use of the Marks when they

made filed the application is that both businesses are "engaged in the New York City garment

trade" and that both allegedly have offices in midtown Manhattan.  Dkt. No. 117 at ¶ 40.  This

fact alone is wholly insufficient to plausibly demonstrate that Sportlife Defendants made any

false representations of fact to the USPTO, let alone that they did so knowingly.

Lastly, the Court denies Plaintiff's request for a Declaratory Judgment pursuant to 28

U.S.C. § 2201(a) that Plaintiff, not Sportlife Defendants, are the rightful holder of the Mark,

because Plaintiff has not demonstrated that it owns the Mark.

### C.  State Law claims

In Plaintiff's complaint, it asserts various state law claims and argues that the Court has

supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367.  Dkt. No. 117 ¶ 17. In

large part, Plaintiff's state law trademark claims are analyzed under the same or a more rigorous

standard than the Lanham Act claims, and thus are not adequately pleaded for the same reasons.

*See Lopez v. BigCommerce, Inc.,* No. 16-CV-8970 (JPO), 2017 WL 3278932, at *4 (S.D.N.Y.

Aug. 1, 2017) (for "trademark infringement and unfair competition under New York common

law, the legal standards are virtually identical to the standards for trademark infringement and

unfair competition under the Lanham Act, except that the New York common law claims require

an additional showing of bad faith.") (cleaned up).

For Plaintiff's remaining state law claims, including for unjust enrichment, the Court declines to exercise supplemental jurisdiction over these causes of action considering that Plaintiff has failed to state a claim under federal law. *See Chenensky v. New York Life Ins. Co.*, 942 F. Supp. 2d 388, 391 (S.D.N.Y. 2013) ("Ordinarily, when a plaintiff's federal claims are dismissed before trial, 'the state law claims should be dismissed as well'" in non-diversity cases.) (quoting *Brzak v. United Nations*, 597 F.3d 107, 113-14 (2d Cir. 2010)).

### D.  Leave to Amend and Stay of Discovery

In Plaintiff's opposition to Defendants' motion, Plaintiff requests leave to amend the Complaint in the event that the Court determines it has failed to state a claim under Rule 12(b)(6).  "[L]eave to amend is ordinarily appropriate absent a compelling reason to deny, such as bad faith, undue delay, dilatory motive, repeated failure to cure deficiencies by amendments previously permitted, futility, or undue prejudice to the opposing party."  *O'Rourke v. Pitney Bowes, In*c., No. 95 CIV 10288 (DLC), 1996 WL 539848, at *1 (S.D.N.Y. Sept. 23, 1996).

The Court will grant Plaintiff's request as to most of its claims.  An amendment to Plaintiff's complaint would not necessarily be futile.  Defendants' motions to dismiss had only limited focus on Plaintiff's failure to plead ownership of a trademark through either assignment or through other means.  *See* Dkt. No. 81.  It is possible that Plaintiff could sufficiently allege facts demonstrating that it acquired ownership of the Marks through a valid assignment or through subsequent use of the Marks.  However, the same is not true for Plaintiff's claims for Fraud and Fraudulent Application.  Plaintiff has continually failed to plead any facts suggesting that Defendants knowingly submitted material, false information to the USPTO, despite full notice of this deficiency in Defendants' first motion to dismiss.  *Id*.  This claim is therefore dismissed with prejudice.

Additionally, discovery was stayed in this case pending resolution of the instant motion. *See* Dkt. No. 94. Because Plaintiffs have failed to adequately allege the most basic element of its trademark claims and its complaint is largely filled with conclusory allegations, Plaintiff has not demonstrated a strong likelihood of success on its claims. While the Court has granted leave to amend under the very liberal standard set forth in Fed. R. Civ. P. Rule 15, the Court will continue to stay discovery. If Plaintiff intends to file an amended complaint it must be filed on or before April 14, 2021.

## III.    CONCLUSION

For the reasons stated above, Plaintiff's Second Amended Complaint has failed to state a claim under federal law. Plaintiff's claim for False or Fraudulent Application is dismissed with prejudice. The Court grants Plaintiff leave to file a Third Amended Complaint as to the remaining claims on or before April 14, 2021. If no amended complaint if filed by that time, the Court will direct entry of judgment and close the case. This resolves Dkt. Nos. 80, 99, 122, 124, 129.

SO ORDERED.

Dated: March 30, 2021
        New York, New York

_____
ALISON J. NATHAN
United States District Judge

17